HONORABLE RONALD B. LEIGHTON

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| DONALD F. KAY and MARILYN HAM-KAY, <br><br> Plaintiffs, <br><br> v. <br><br> THURSTON COUNTY, a municipal corporation of the State of Washington and J. MICHAEL MORGAN, <br><br> Defendants. | Case No. C08-5041RBL <br><br> ORDER GRANTING SUMMARY JUDGMENT |

THIS MATTER comes before the Court on Motion for Summary Judgment brought by Defendant Thurston County [Dkt. #20]. The Court has reviewed the materials submitted for and against the motion. Oral argument is not necessary for the Court to resolve the issues presented in the motion. For the following reasons, the motion is **GRANTED.**

## **FACTUAL BACKGROUND**

The facts giving rise to this controversy do not appear to be in dispute. Donald Kay suffers from cerebral palsy. One symptom of his affliction is a speech impairment. According to Kay, both in work and in other settings, he does not experience any problem being understood by others. (Exh. F to Morgan Decl., Dkt. #21). He speaks to groups on occasion and uses a good natured, disarming reference to his "accent" as a way of connecting with the audience despite his impairment.

In 2005, Kay and his wife Marilyn, commenced a civil action pro se in the Thurston County Superior Court. They alleged that a contractor hired to re-roof their house failed to perform all of the work contemplated in the contract. The claim for damages was less than $50,000 so the case was transferred to the Superior Court mandatory arbitration program, pursuant to RCW 7.06 *et. seq.* and local rule. J. Michael Morgan was appointed arbitrator. The arbitration hearing was scheduled for March 22, 2006.

On March 11, 2006 Kay sent a letter to Morgan and opposing counsel, G. Saxon Rodgers. In that letter he requested a reasonable accommodation for his speech impediment. He acknowledged that in connection with his work as a state employee and in other settings, he has no problem being understood by others. Nevertheless, because Attorney Rodgers stated in the pre-hearing statement of proof that his client did not have any significant discussions with Mr. Kay, as Mr. Kay has some kind of impairment that makes it difficult for his speech to be understood," (Exh. F to Morgan Decl., Dkt. #21) Kay made his request for accommodation. His request in the letter was two-fold: (1) convene a pre-arbitration meeting with all parties and the arbitrator to determine if everyone is able to understand his speech, and (2) if he is not understood by everyone, have a court reporter present at the arbitration to project his words to a computer screen that could be read by the other participants. He concluded by repeating that he does not ordinarily require any reasonable accommodation for others to understand his speech.

In response to Kay's letter, the defense registered an objection to having to pay for a court reporter but consented to Kay and the arbitrator having an ex parte communication to determine if Kay's speech could be understood.

On March 15, the arbitrator responded to Kay's letter by rejecting the request for a court reporter because no funds were available under the arbitration rules or from the clerk's office. If the Kays wanted such service they would have to pay for it themselves. Although Morgan anticipated that he would be able to handle any communication problems during the hearing, he did invite the Kays to give him a call to discuss the "communication issue." (Morgan Decl. at Exh. H, Dkt. #21). The Kays did not call, however.

Before the Morgan letter was received by the Kays on the 17th of March, Mr. Kay had initiated contact with the Court's Arbitration Coordinator, Tom Graham, on March 16. When asked about use of a court reporter to project Kay's words at the arbitration, Graham said he would confer with the Court

Administrator, Marti Maxwell. Later that day, Maxwell authorized the court reporter to be provided at the courthouse and at court expense. On the morning of March 17, still before the Kays received Morgan's letter, they again confronted Graham to present a letter requesting that a court reporter be made available at the arbitration hearing. Graham told the Kays that a court reporter would be made available.

Later on the 17th, Graham received a copy of Morgan's March 15 letter. He forwarded it by e-mail to Mr. Kay at noon. Kay sent a reply e-mail to Graham at 3:36 p.m. but by that time Graham had left work on medical leave. In his reply e-mail, Kay expressed confusion at the disconnect between Morgan's decision to not provide a court reporter and Graham/Maxwell's decision to provide one. Unfortunately, Graham and Kay did not communicate further. No court reporter was provided. The arbitration was conducted on March 22 with everyone gathering at the private law office arranged by Morgan rather than at the courthouse where the court reporter was to have been made available.

At the arbitration, no one raised an issue about the missing court reporter. Graham and Maxwell of course were not present. Morgan and Rodgers were never made privy to the discussions between the Kays and Graham and between Graham and Maxwell. The Kays, who were aware of the confusion, said nothing.

The arbitration appears to have been conducted without difficulty. According to Kay, Morgan did ask Kay to repeat himself "a couple times" and Kay said "it felt demeaning." (Exh. A to Kamerrer Decl., pp. 60-61, Dkt. #23). Kay acknowledged that Morgan was polite and respectful at all times. *Id*. On several occasions during the arbitration, other parties indicated that they could not understand what Kay had said. In response, the arbitrator, Morgan, paraphrased what Kay had said. Although Kay cannot recall Morgan paraphrasing him inaccurately, he did feel demeaned. (Exh. A. to Kamerrer Decl., pp. 61-63, Dkt. #23).

The record is silent as to whether Mr. Kay would have felt differently if a court reporter had been asking him to repeat his words or had paraphrased his statements instead of the arbitrator.

The arbitration resulted in a ruling adverse to the Kays. No argument is made in this case that the outcome of the arbitration was influenced by any real or perceived mistake in communication.

## PROCEDURAL HISTORY

The Kays filed their complaint in this case on January 23, 2008. They sued the arbitrator, J. Michael Morgan, and Thurston County for violation of the Americans With Disabilities Act, 42 U.S.C. §12101 *et. seq.*; the Rehabilitation Act, 29 U.S.C. §701; and the Washington Law Against Discrimination, RCW 49.60 *et. seq.* On November 20, 2008 this Court granted partial summary judgment in favor of defendants on the basis of quasi-judicial immunity. [Dkt. #25]. J. Michael Morgan was dismissed as a defendant and all claims against Thurston County arising out of the conduct of the arbitrator were similarly dismissed. This current motion is directed at the actions of the Court's Arbitration Coordinator, Tom Graham.

## SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate when, viewing the facts in the light most favorable to the nonmoving party, there is no genuine issue of material fact which would preclude summary judgment as a matter of law. Once the moving party has satisfied its burden, it is entitled to summary judgment if the non-moving party fails to present, by affidavits, depositions, answers to interrogatories, or admissions on file, "specific facts showing that there is a genuine issue for trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986). "The mere existence of a scintilla of evidence in support of the non-moving party's position is not sufficient." *Triton Energy Corp. v. Square D Co.*, 68 F.3d 1216, 1221 (9th Cir. 1995). Factual disputes whose resolution would not affect the outcome of the suit are irrelevant to the consideration of a motion for summary judgment. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). In other words, "summary judgment should be granted where the nonmoving party fails to offer evidence from which a reasonable [fact finder] could return a [decision] in its favor." *Triton Energy*, 68 F.3d at 1220.

## DISCUSSION

**A.**  **The Law.**

To prove that a public program or service violated the ADA, plaintiff must show that (1) he is a "qualified individual with a disability," (2) he was either excluded from participation in or denied the benefits of a public entity's services, programs, or activities, or was otherwise discriminated against by the public entity, and (3) such exclusion, denial of benefits, or discrimination was by reason of his disability. *Weinrich v. Los Angeles County Metropolitan Transp. Auth.,* 114 F.3d 976, 978 (9th Cir. 1997).

A plaintiff bringing suit under §504 of the Rehabilitation Act must prove (1) he is an individual with a disability; (2) he is otherwise qualified to receive the benefit; (3) he was denied the benefits of the program solely by reason of his disability; and (4) the program receives federal financial assistance. *Duvall v. Kitsap County*, 260 F.3d 1124, 1135 (9th Cir. 2001).

The elements of a *prima facie* claim of discrimination in a place of public accommodation under the WLAD are: (1) the plaintiff is disabled; (2) defendant's establishment is a place of public accommodation; (3) disabled persons are not provided services comparable to those provided non-disabled persons by or at the place of public accommodation; and (4) the disability was a substantial factor causing the discrimination. *Fell v. Spokane Transit Auth.*, 128 Wash. 2d 618, 637, 911 P.2d 1319 (Wn. 1996). The WLAD does not require a showing of intentional discrimination in suits for money damages. RCW 49.60.030(2).

**B.    Analysis.**

    **1.    Is plaintiff disabled?**

The defendant argues that plaintiff does not qualify as disabled and therefore fails to establish the first element of each of the statutory claims asserted in the complaint. Defendant supports its claim by pointing out that plaintiff functions at a very high level in a responsible, supervisory position with the State of Washington. By his own admission, people can understand him despite his speech impairment. Indeed, no allegation is made either in the complaint or in the opposition memo that he wasn't understood during the arbitration hearing.

The ADA provides that a person is disabled if he has a physical impairment that "substantially limits" a major life activity. 42 U.S.C. §12102(2). Major life activities include speaking, performing manual tasks, and working. 28 CFR §35.104. Moreover, individuals may fall within ADA's definition for being regarded as having disability when: (1) a covered entity mistakenly believes that the person has a physical impairment that substantially limits one or more major life activities, or (2) the covered entity mistakenly believes that actual, non-limiting impairment substantially limits one or more major life activities. *Sutton v. United Airlines*, 527 U.S. 471, 481-82 (1999). Similarly, under the WLAD, "disability" means the presence of a sensory, mental, or physical impairment that: (i) is medically cognizable or diagnosable; or (ii) exists as a record or history; or (iii) is perceived to exist whether or not it

exists in fact.

It is not disputed that Mr. Kay has cerebral palsy that results in a noticeable speech impairment. There is evidence that the County employees from whom plaintiff requested accommodation, perceived that Kay was disabled and therefore approved his request for accommodation. Defendant fails to cite a case which supports its claim that under the same, or similar, facts of this case, a plaintiff did not qualify as "disabled." At minimum, genuine issues if material fact exist that would compel the Court to reserve this question for the jury.

### 2. Did defendant engage in discrimination?

Defendant argues that there is no evidence of discriminatory intent on the part of any county employee. Without a showing of discriminatory intent, compensatory damages are not available under the ADA or §504 of the Rehabilitation Act. *Ferguson v. City of Phoenix*, 157 F.3d 668, 674 (9th Cir. 1998). In order to show intentional discrimination, the plaintiff must show that the defendant acted with "deliberate indifference." *Duvall v. County of Kitsap*, 260 F.3d 1124, 1138-39 (9th Cir. 2001). A showing of simple or even heightened negligence will not suffice to establish deliberate indifference. *Board of County Comm'rs. V. Brown*, 520 U.S. 397, 407 (1997). In contrast, under Washington state law, a party claiming disability-based discrimination is not required to show that the discrimination was intentional. *Negron v. Snoqualmie Valley Hospital*, 86 Wn. App. 579, 588, 936 P.2d 55 (1997).

Here, the evidence appears to support the conclusion that the failure to provide real time reporting at the arbitration hearing was the result of honest mis-communication or non-communication among the parties, including Mr. Kay. The County was willing to provide the requested accommodation before the arbitrator informed all parties that, in his opinion, it wasn't necessary. Although it seems unlikely that the evidence supports plaintiff's claim of discriminatory intent, material issues of fact prevent the Court from resolving this issue in summary judgment.

### 3. Was plaintiff excluded from participating in the arbitration proceeding?

Although not specifically raised in defendant's motion, the Court is of the view that this is the central question in the case. It would appear that this case is being pursued as the sequel to *Duvall v. Kitsap County*, 260 F.3d 1124 (9th Cir. 2001), a case prosecuted by plaintiff's counsel. In that case, plaintiff brought an action against a superior court judge, the county in which he served, the court

administrator and court ADA coordinator, as well as members of the county council. As here, the claim was that the defendants violated plaintiff's rights under the ADA, the Rehabilitation Act and the Washington Law Against Discrimination (WLAD). The claim emanated from defendants' refusal/failure to provide real-time transcription at trial as an accommodation to his significant hearing impairment. Plaintiff asserted that despite the superior acoustics and enhanced sound system in the county's courtroom for the hearing-impaired, he was still unable to hear and therefore meaningfully participate in his divorce proceeding. The accommodation offered by the judge was to allow plaintiff to move about in the courtroom so he could get close enough to the speaker to hear what was said.

After the trial, plaintiff brought a motion for mistrial. That motion was denied. A subsequent grievance was filed by plaintiff which was denied. The County Board of Commissioners denied plaintiff's appeal. The federal court action ensued. The federal magistrate judge granted summary judgment dismissing all claims against all defendants.

On appeal, the Ninth Circuit panel affirmed the dismissal of claims against the judge citing judicial immunity. The county commissioners also prevailed on appeal. As to the county itself and the other county employees, however, the court determined that genuine issues of material fact existed as to whether video-text display was a reasonable accommodation of plaintiff's disability and thereby required in order to allow plaintiff to participate meaningfully in his divorce proceeding.

In this case, the very nature of the disability undermines plaintiff's argument that he was denied equal participation in his legal proceeding. Unlike the plaintiff in *Duvall*, Kay has the physical capacity to receive and comprehend the words of other participants in the hearing. His impairment jeopardized instead the ability of others to understand him. With or without projecting his words on a computer screen, the fact remains that someone in the arbitration hearing had to comprehend Kay's words in order for the hearing to proceed. With Kay's requested accommodation, that someone would be the court reporter. As the hearing actually proceeded, that person was the arbitrator. Under either scenario, the likelihood that Kay would have to repeat himself on occasion or that someone would occasionally paraphrase his words, would be present. Without some statement by him regarding his preference to repeat himself rather than be "paraphrased," the possibility of hurt feelings remains, whether from the arbitrator or the court reporter. The simple truth is that the requested accommodation in no way had the capacity to insulate Mr. Kay from

the possibility of insult as he defined it. The question for a trier of fact would distill down to: "How would Mr. Kay's world have been different had he received all that he wanted from the County?" The answer to that question requires gross speculation that a jury is directed to avoid. Would the court reporter have superior ability to understand Kay? Would he/she be more sensitive to Kay's unexpressed desire to repeat himself rather than be paraphrased by others?

In this action, the Kays do not allege that they were denied the opportunity to fully participate in the arbitration hearing. They do not claim that any participant, including the arbitrator, failed to ultimately understand the testimony or arguments of Mr. Kay. Finally, the Kays do not argue that the outcome of the arbitration was wrong. Rather, they argue that unlike the deposition in this case where the court reporter asked Kay to repeat himself when not understood, the arbitrator in the underlying hearing, on "several occasions" accurately and respectfully paraphrased Kay's words when others asked for clarification. Kay felt demeaned and seeks damages for emotional distress.

On this record, it is inconceivable to the Court that any reasonable jury could find that the failure to provide projected, real time transcription excluded him from meaningful participation in the arbitration proceeding.

## **CONCLUSION**

For the foregoing reasons, Defendant's Motion for Summary Judgment [Dkt. #20] is **GRANTED.**

Dated this 21st day of January, 2009.

_____
RONALD B. LEIGHTON
UNITED STATES DISTRICT JUDGE